IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DOMNIQUE WASHINGTON,

   *Plaintiff,*

vs.

U.S. BANK NATIONAL ASSOCIATION,

   *Defendant.*

Case No. 2:18-CV-02646-EFM

**MEMORANDUM AND ORDER**

Plaintiff Dominique Washington claims that her former employer, U.S. Bank National Association ("U.S. Bank"), discriminated and retaliated against her based on her disability, sex, and race. Now before the Court is U.S. Bank's Motion for Summary Judgment on all claims (Doc. 30). For the reasons explained below, the Court grants Defendant's motion.

**I.  Factual and Procedural Background[1]**

Washington was employed as collector at U.S. Bank from May 23, 2016, until she was terminated on July 20, 2018. Washington's job duties included contacting customers with delinquent credit card accounts by telephone and establishing payment arrangements with them. On July 18, 2017, U.S. Bank's management verbally communicated to employees that they must

---

[1] In accordance with summary judgment procedures, the Court has laid out the uncontroverted material facts in the light most favorable to the non-moving party.

leave messages on cardholders' voicemails. On August 3, 2017, U.S. Bank discovered that Washington had failed to leave a message on a cardholder's voicemail and had notated on the account that she did not reach the voicemail, when in fact she had disconnected the call upon hearing the voicemail.[2] At that time, Washington was counseled that she should be leaving messages and accurately notating accounts. Two other employees were also disciplined for failure to leave messages on cardholders' voicemails.

On August 10, 2017, U.S. Bank sent an email to employees reiterating the department's policy that collectors were to leave messages for cardholders, and that failing to do so would result in disciplinary action. On September 5, 2017, U.S. Bank sent an additional email modifying the department's policy to require collectors to leave messages for cardholders only if the account had a balance over $750.00. On September 8, 2017, U.S. Bank discovered that Washington had again failed to leave a voice message on a cardholder's account and notated that she had not reached the voicemail.[3]

On September 16, 2017, U.S. Bank issued a written warning to Washington regarding the requirement that voice messages be left on accounts with balances over $750.00. Two days later, Washington made an internal complaint to U.S. Bank Human Resources and called in a complaint to U.S. Bank's Ethics and Compliance Hotline alleging race-based discrimination. On October 6,

---

[2] Although Washington does not dispute that she hung up the call upon reaching the voicemail or that she notated that she did not reach the voicemail, she states that she notated the account the way she was trained and that U.S. Bank management waivered as to whether she should leave messages. The Court concludes that whether Washington thought she was following U.S. Bank policy is not material because this incident was not the stated basis for Washington's termination or other discipline.

[3] Here, the parties dispute whether the notation on the account was false and Washington again asserts that she did as she was trained.

2017, Washington filed a charge of discrimination with the EEOC, alleging race and sex discrimination and retaliation. The EEOC found there was insufficient evidence to support either claim and issued a dismissal and notice of right to sue on December 28, 2017.

On April 27, 2018, a coworker of Washington's filed a complaint against Washington, and stated in the complaint that she was aware of a complaint Washington had made about her. In June 2018, an anonymous caller submitted a report to U.S. Bank's ethics hotline accusing Washington of insubordination, failing to work coworkers' accounts, stealing accounts, and generally being disrespectful of others. On July 10, 2018, U.S. Bank again noted that Washington had failed to leave voice messages on accounts and notated that she had not reached the voicemail. On July 11, 2018, another coworker accused Washington of stealing accounts, not sending collectors messages, and engaging in confrontations with others on the work floor. Finally, on July 17, 2018, U.S. Bank again noted that Washington had failed to leave voice messages on accounts and notated incorrectly that she had not reached the voicemail. Washington was terminated July 20, 2018, for continued failure to follow departmental policies and properly notate accounts.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5] The movant bears

---

[4] Fed. R. Civ. P. 56(a).

[5] *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citations omitted).

the initial burden of proof and must show the lack of evidence on the nonmovant's claim.[6] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead set forth specific facts showing a genuine issue for trial as to those matters for which it carries the burden of proof.[7] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[8] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

### III. Analysis

Washington alleged in her complaint that U.S. Bank discriminated and retaliated against her based on her race, sex, and disability. U.S. Bank now moves for summary judgment on all counts. The Court will first address Washington's Title VII claims and then Washington's ADA claims.

**A.     Plaintiff's Title VII Discrimination Claims**

Title VII of the Civil Rights Act of 1964 prohibits race and sex discrimination in employment.[10] Washington has not presented direct evidence that U.S. Bank discriminated against her based on her race or sex. When a plaintiff has no direct evidence of discrimination, her claim

---

[6] *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citations omitted).

[7] *Id.* (citing *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

[8] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[10] 28 U.S.C. § 2000e-2(a); *see also Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1288 (10th Cir. 2013).

is subject to the *McDonnell Douglas* burden-shifting analysis.[11]  Under *McDonnell Douglas*, the plaintiff must first demonstrate a prima facie case of discrimination.[12]  The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision.[13]  Finally, the burden shifts back to the plaintiff to demonstrate that the defendant's reason was pretextual.[14]

### *1.     Plaintiff's Prima Facie Case*

To establish a prima facie case of race or sex discrimination, a plaintiff must show that (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.[15]  The parties do not dispute that Washington belongs to a protected class and that she was terminated by U.S. Bank.  Thus, the Court only need consider whether Washington has established that her termination took place under circumstances giving rise to an inference of discrimination.

An inference of discriminatory discharge arises if "an employee who belongs to a racial minority . . . eliminates the two most common, legitimate reasons for termination, i.e., lack of qualification or the elimination of the job."[16]  Accordingly, a prima facie case of discriminatory discharge generally requires that the plaintiff produce evidence that: (1) she belongs to a protected class; (2) she was qualified and satisfactorily performing her job duties; (3) despite her

---

[11] *Timmons v. AGC Flat Glass N. Am., Inc.*, 2015 WL 6511552, at *6 (D. Kan. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1972)).

[12] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802); *see also Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1103, n. 1 (10th Cir. 1998); *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1513 (10th Cir. 1997).

[13] *Timmons*, 2015 WL 6511552, at *6 (citing *McDonnell Douglas*, 411 U.S. at 802).

[14] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

[15] *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011).

[16] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000) (quoting *Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999)).

qualifications, she was fired; and (4) her position was not eliminated after her discharge.[17] The burden of establishing a prima facie case is "not onerous" but, rather, "de minimis."[18] It is undisputed that Washington is a member of a protected class, had been employed by U.S. Bank for over two years at the time of her termination, and met her collection goals consistently. Thus, Washington has established that she was qualified and satisfactorily performing her job duties.[19] Further, because neither party presented evidence that U.S. Bank eliminated Washington's position after her discharge, the Court concludes that U.S. Bank terminated Washington for alleged cause and not in conjunction with a workforce reorganization or reduction.[20] Therefore, Washington has presented sufficient evidence for each element of her prima facie case.

Although U.S. Bank argues that Washington has not met her burden because she has failed to present evidence that similarly situated employees who violated work rules of comparable seriousness were treated differently, "[a]t the prima facie stage of the *McDonnell Douglas* analysis, a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory

---

[17] *Id.* ("The firing of a qualified minority employee raises the inference of discrimination because it is facially illogical to randomly fire an otherwise qualified employee and thereby incur the considerable expense and loss of productivity associated with hiring and training a replacement.") (quoting *Perry*, 199 F.3d at 1140).

[18] *Plotke v. White*, 405 F.3d 1092, 1099, 1101 (10th Cir. 2005) (citations omitted).

[19] Although U.S. Bank asserts that Washington was not satisfactorily performing her job duties, the Tenth Circuit has held "that allowing a defendant to rely on subjective qualifications to defeat a plaintiff's prima facie case would deny the plaintiff the opportunity to demonstrate that those subjective criteria were a means to effect a discriminatory action." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192 (10th Cir. 2000) (citing *Burrus v. United Tele. Co. of Kan.*, 683 F.2d 339, 341–42 (10th Cir. 1982)). Thus, "an employer may not defeat a plaintiff's prima facie case by asserting that the plaintiff failed to satisfy subjective qualifications." *Id.* (citing *Burrus*, 683 F.2d at 342).

[20] *English v. Colo. Dep't of Corrs.*, 248 F.3d 1002, 1008 (10th Cir. 2001) ("Neither party has raised evidence tending to show whether [plaintiff's] position was eliminated after his discharge. However, given [defendant's] stated reason for firing [plaintiff] . . . we have no trouble concluding that there is sufficient evidence in the record to find [plaintiff] was not terminated because of a workplace reduction.").

reasons subsequently proffered by the defendant."[21]  If U.S. Bank could defeat Washington's prima facie case by articulating the reasons for her termination, Washington would be "denied the opportunity to show that the reasons advanced by the defendant were pretextual."[22]  Thus, Washington "has satisfied her prima facie burden of showing she is qualified by presenting some credible evidence that she possesses the objective qualifications necessary to perform the job at issue."[23]

### 2.     *Defendant's Proffered Reason for Discharge*

Because Washington has established her prima facie case, the burden now shifts to U.S. Bank to articulate a legitimate, nondiscriminatory reason for her termination.[24]  U.S. Bank is not required "to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion."[25]  U.S. Bank "need only 'explain its actions against the plaintiff in terms that are not facially prohibited by Title VII.' "[26]  Here, U.S. Bank asserts that Washington was fired because she repeatedly failed to leave voice messages on accounts with balances over $750.00 in violation of U.S. Bank policy, and falsely notated on her call records that she had not reached account voicemails when she in fact had.  The Court concludes that this is a legitimate, nondiscriminatory reason for termination under Title VII.

---

[21] *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1193 (citing *MacDonald v. Eastern Wyoming Mental Health Ctr.*, 941 F.2d 1115, 1119 (10th Cir. 1991)).

[22] *Id.* (citing *MacDonald*, 941 F.2d at 1119–20).

[23] *Id.* at 1194.

[24] *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1224 (10th Cir. 2007) (citing *Plotke*, 405 F.3d at 1099).

[25] *Id.* (quoting *EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992)).

[26] *Id.* (quoting *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000)).

### *3.     Plaintiff's Pretext Claim*

Now that U.S. Bank has established a legitimate, nondiscriminatory reason for termination under Title VII, Washington must present sufficient evidence for a jury to reasonably conclude that U.S. Bank's reasons for dismissal are merely a pretext for concealing intentional discrimination. Evidence revealing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation for the termination may support an inference of pretext.[27] Plaintiffs typically make a showing of pretext in one of three ways:

> (1) [E]vidence that the defendant's stated reason for the adverse employment action was false; (2) evidence that the defendant acted contrary to a written . . . policy prescribing the action to be taken by the defendant under the circumstances; or (3) evidence that the defendant acted contrary to an unwritten policy or contrary to the employer's practice when making the adverse employment decision affecting the plaintiff.[28]

Here, Washington first alleges that U.S. Bank's stated reason for termination was false, asserting that the behavior that she was disciplined for in 2017 did not happen again. In its initial motion, however, U.S. Bank provided paper call records from July 2018 purporting to show that Washington hung up nine calls upon reaching the voicemail, and that Washington falsely noted on each call that she did not reach a voicemail. Although the call logs show that the calls were noted as "did not reach person/voicemail," it is unclear from the face of the records (1) whether Washington hung up the calls upon reaching the voicemail; and (2) whether the documented calls were made to accountholders with balances of over $750.00. Despite this ambiguity, the call logs produced by U.S. Bank show that Washington's calls lasted between two to five seconds, and U.S. Bank's department manager, Richard "Tony" Farr, testified that calls of fewer than thirty seconds

---

[27] *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014).

[28] *Id.* (alterations omitted) (quoting *Kendrick*, 220 F.3d at 1230).

are unusually short as it takes about thirty-five seconds for collectors to leave a message. In response, Washington asserts only that she did not falsely notate the calls.[29]

Whether Washington in fact falsely notated the calls is not legally relevant, however, as "a challenge of pretext requires [the court] to look at the facts as they appear to the person making the decision to terminate."[30] Washington does not dispute that her supervisor, Leonard Razo, documented that Washington failed to leave messages on cardholders' voicemails or falsely notated the accounts. She also does not dispute that Razo's supervisor—Farr—conducted a separate investigation after being informed of Razo's concerns and noted the same issues with Washington's calls. Finally, and most critically, Washington does not dispute that the U.S. Bank site director, Eric Roland, believed Washington had engaged in the behavior identified by Razo and Farr, or that U.S. Bank management and Human Resources agreed that her employment should be terminated due to her continued violation of department policies after receiving written and verbal warnings.

"Even though all doubts concerning pretext must be resolved in plaintiff's favor, a plaintiff's allegations alone will not defeat summary judgment."[31] The undisputed evidence shows

---

[29] Regarding the July 2018 calls, Washington affirmatively disputes only U.S. Bank's statement that her managers identified approximately ten different examples of her falsely notating accounts. She did this by citation to her own testimony that the behavior she was written up for in 2017 "didn't happen again." Doc. 34, at p. 4-5, ¶¶ 19-21 (citing Washington Dep., Doc. 34-9, 113:14-16). Although the Court must view all reasonable inferences in the light most favorable to the non-moving party, because U.S. Bank has carried its initial burden of showing a legitimate, nondiscriminatory reason for discharge, Washington now has the burden to "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell*, 218 F.3d at 1197 (quoting *Adler*, 144 F.3d at 670–71). By failing to present any evidence to dispute either the authenticity of the call logs or Farr's explanation of the call logs, Washington has failed to raise a dispute of fact as to whether she had been falsely notating accounts.

[30] *Kendrick*, 220 F.3d at 1231.

[31] *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1324 (10th Cir. 1997) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994)).

that Roland and Human Resources discharged Washington based on Razo and Farr's reports that Washington had been hanging up calls upon reaching cardholders' voicemails and improperly documenting that she had not. Washington has provided no evidence to show that Farr's interpretation of the call logs was implausible or that anyone at U.S. Bank may have had discriminatory motives in seeking to terminate her. Thus, the Court concludes that Washington has not identified "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in U.S. Bank's explanation such that a reasonable jury could conclude that the stated reason for termination was false.[32]

Washington next asserts that U.S. Bank acted contrary to written policy in terminating her before she had received a final warning. In support of this claim, Washington produces notes from a "Team Razo Huddle," which states that employees who fail to leave messages as required will receive: (1) a verbal warning; (2) a written warning; (3) a final warning; and (4) termination of employment. U.S. Bank does not dispute the validity of the document, but instead cites to the testimony of Farr, Razo, Roland, and U.S. Bank's Human Resources Partner stating that U.S. Bank's policy does not require progressive discipline before termination of an employee. Although a review of the Team Razo Huddle document could persuade a reasonable jury that U.S. Bank policy did require a final warning, Washington's evidence cannot be viewed in isolation.

Neither party presented any evidence of a formal, written disciplinary policy, but U.S. Bank's Code of Ethics and Business Conduct confirms the at-will nature of the employment relationship, stating "we may terminate an employment relationship at any time for any lawful reason." Further, Washington was advised in her written warning—dated eleven days after the

---

[32] *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014).

Team Razo Huddle—that any additional incidents would result in disciplinary action, up to and including termination. Although "disturbing procedural irregularities can satisfy the requirements of a pretext claim . . . the mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent."[33] "The question is whether the jury could conclude that the procedural irregularities were somehow related to the decision-maker's discriminatory purpose."[34]

Because Washington's written warning—provided to Washington after the Team Razo Huddle—outlined that further violation of U.S. Bank policy could result in termination, the Court finds that U.S. Bank's failure to give Washington a final warning after her written warning is not a "disturbing procedural irregularity." Even assuming to Washington's benefit that her termination was the result of a procedural irregularity, Washington points to no other evidence of discriminatory intent by the decision-makers in her termination. She relies entirely on her subjective belief that her race and/or gender was the reason that U.S. Bank terminated her. But, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[35] Thus, Washington has not sufficiently raised the inference of discrimination by U.S. Bank's failure to give her a final warning after her written warning.

---

[33] *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 889 (10th Cir. 2018) (citations, alterations, and quotations omitted).

[34] *Id.* (quoting *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995)).

[35] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citations omitted).

Finally, Washington argues that numerous coworkers were not terminated, despite also failing to leave messages or properly notate accounts. A plaintiff may "show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other similarly-situated, nonprotected employees."[36] "Individuals are considered 'similarly-situated' when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.' "[37] "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated."[38]

Washington's theory fails from the outset because she does not demonstrate that other employees committed similar repeated policy violations. Washington presents only her own unsupported testimony that three other employees also failed to leave messages on accounts.[39] Further, Washington admits on the record that she did not listen to other collectors' calls, does not have evidence that other collectors failed to leave messages, and does not know whether the identified employees were written up for their alleged failure to leave messages.[40] Thus, Washington presents no evidence that she was treated differently than other similarly situated

---

[36] *Kendrick*, 220 F.3d at 1232.

[37] *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007) (citation omitted).

[38] *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (citations omitted).

[39] Plaintiff's Memorandum in Opposition, Doc. 34, at p. 12, ¶ 6 (citing Washington Dep., Doc. 34-10, 142:4-143:8).

[40] Washington Dep., Doc. 34-9, at 103:9-104:11; Doc. 34-10, at 142:4-145:3.

employees.[41]  Moreover, her argument that other employees were not disciplined for similar conduct is without merit as she does not dispute that U.S. Bank disciplined two other employees for failure to leave messages on cardholders' voicemail accounts.

Although Washington is correct that she is not required to disprove U.S. Bank's reason for termination, she must provide sufficient evidence such that a rational jury could conclude that U.S. Bank's proffered reason for terminating her was "too 'weak, implausible, inconsistent, incoherent, or contradictory' to believe."[42]  Washington's cites only *Fassbender v. Correct Care Sols., LLC*,[43] for her assertion that she has created a genuine issue of material fact regarding U.S. Bank's stated reason for termination, but the facts of *Fassbender* are distinguishable from those here.  In *Fassbender*, the plaintiff brought a discriminatory discharge claim after she was terminated while pregnant.[44]  In the weeks preceding the plaintiff's termination, the plaintiff's supervisor commented that he had "too many pregnant workers" and did not know how he was going to handle "all of these people being pregnant at once."[45]  Further, the plaintiff's employer's failed "to consistently identify exactly why it terminated her," including changing its position even after the plaintiff had filed a formal EEOC charge.[46]

---

[41] *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) ("To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury.") (citing *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1216 (10th Cir. 2004) ("Jury verdicts may not be based on speculation or inadmissible evidence or be contrary to uncontested admissible evidence.")).

[42] *Fassbender*, 890 F.3d at 890 (quoting *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1179 (10th Cir. 2006)).

[43] 890 F.3d 875 (10th Cir. 2018).

[44] *Id.* at 882.

[45] *Id.* at 884–85.

[46] *Id.* at 887.

Here, unlike the *Fassbender* plaintiff, Washington has presented no evidence of discriminatory statements by anyone at U.S. Bank or any evidence of "disturbing procedural irregularities" surrounding her termination.[47]  Moreover, Washington has not provided evidence that she was treated differently than similarly situated employees or disputed that the final decision-makers agreed that her employment should be terminated due to her continued violation of the department's policies after receiving both a verbal and written warning.  The Court therefore concludes that no rational jury could conclude that U.S. Bank's proffered reason for terminating Washington is "too 'weak, implausible, inconsistent, incoherent, or contradictory' to believe."[48]

**B.     Plaintiff's Title VII Retaliation Claims**

Like Title VII discrimination claims, Title VII retaliation claims are analyzed under the *McDonnell Douglas* framework.[49]  Thus, Washington must first demonstrate a prima facie case of retaliation.[50]  If she does so, the burden shifts to U.S. Bank to articulate a legitimate and nondiscriminatory reason for its decision.[51]  Then, the burden shifts back to Washington to demonstrate that U.S. Bank's reason for termination is merely pretext.[52]

To establish a prima facie case of retaliation, Washington must demonstrate: "(1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action; and (3) there is a

---

[47] *Fassbender*, 890 F.3d at 889 (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1220 (10th Cir. 2002)).

[48] *Id.* at 890 (quoting *Metzler*, 464 F.3d at 1179.

[49] *Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014).

[50] *Estate of Bassatt v. Sch. Dist. No. 1*, 775 F.3d 1233, 1238 (10th Cir. 2014).

[51] *Id.*

[52] *Id.*

causal connection between [her] protected activity and the adverse employment action."[53] U.S. Bank does not dispute that Washington engaged in protected activity or that she suffered an adverse employment action. Rather, it disputes that there is a causal connection between Washington's protected activity and her termination. "A causal connection is established where the plaintiff presents 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.' "[54] "However, unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."[55]

Because Washington made her discrimination complaint over nine months before her termination, temporal proximity alone cannot establish her prima facie case of retaliation.[56] Thus, Washington must produce "additional evidence" tying her complaint to her termination.[57] This evidence "must be based on more than mere speculation, conjecture, or surmise."[58] Essentially, Washington must establish that "her protected activity was a but-for cause of the alleged adverse action" by U.S. Bank.[59]

---

[53] *Davis*, 750 F.3d at 1170 (citation omitted).

[54] *Garrett*, 305 F.3d at 1221 (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir.1999)).

[55] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing *Conner v. Schnuck Markets*, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997)).

[56] *See id.* ("By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.") (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)).

[57] *See Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) ("Because Mr. Ward's participation in the EEOC proceedings took place years earlier, Mr. Ward must use 'additional evidence . . . to establish causation.' ") (citing *Anderson*, 181 F.3d at 1179).

[58] *Id.* (quoting *Bones*, 366 F.3d at 875).

[59] *Davis*, 750 F.3d at 1170 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 362 (2013)).

Washington argues that her termination was the *coup de grace* following nine months of adverse action orchestrated by her coworkers and U.S. Bank. Washington asserts that the first act of retaliation occurred in October 2017 when U.S. Bank failed to properly investigate her discrimination complaint and subjected her to a "very hostile" work environment. Washington's only basis for her claim that U.S. Bank did not properly investigate her claim is that U.S. Bank's Human Resources business partner, Erica Phillips-Reed, testified that she (1) does not use the same procedure each time she investigates complaints; (2) did not interview any minority employees about Washington's complaint; and (3) did not interview any non-management employees, other than Washington, about Washington's complaint. This does not establish an inference of retaliation, however, as Washington's own opinion of best investigation practices does not show that Phillips-Reed intended to retaliate against her, or that a reasonable employee would be dissuaded from making or supporting a charge of discrimination based on Phillips-Reed's investigation.[60]

The uncontroverted facts establish that Phillips-Reed investigated Washington's complaint that other collectors were not being written up for the same behavior as Washington, and that Phillips-Reed determined that other employees had been given warnings for the same behavior. Phillips-Reed also testified that she did not think it was necessary or appropriate to interview Washington's coworkers regarding the complaint. Washington presents no evidence that Phillips-Reed's testimony was false, nor that Phillip-Reed's investigation was designed to harm Washington in some way. Viewing Washington's assertions that Phillips-Reed is generally

---

[60] *Barone v. United Airlines, Inc.*, 355 F. App'x 169, 183 (10th Cir. 2009) ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (alteration in original) (quoting *Burlington N.& Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

incompetent at her job in the light most favorable to Washington, the Court does not conclude that Phillips-Reed's alleged incompetence justifies an inference of retaliatory motive.

Washington's claim that U.S. Bank subjected her to a "very hostile" work environment after she made her complaint is also without merit. Washington refers to an issue in October 2017 in which some employees improperly disconnected other collectors' calls. In her deposition testimony, Washington testified that it was "very hostile" that other coworkers were hanging up calls because they were "hanging up on [her] money." Washington did not present evidence that she was the only collector whose calls were disconnected, or that the disconnected calls were in any way related to her discrimination claim. Instead, Washington testified that this issue created a "hostile" environment because agents were constantly sending emails or going to other agents' desks to figure out why they were hung up on. This does not meet the legal definition of a hostile work environment and does not establish that the alleged "hostile" behavior was in any way related to Washington's discrimination complaint.[61]

Finally, Washington argues that three complaints made about her by her coworkers were also part of the larger retaliatory scheme by U.S. Bank. Although Washington states that it "would not be far-fetched" for a jury to conclude that her initial discrimination complaint was the catalyst for her coworkers' complaints about her, she did not introduce any evidence that her coworkers were aware of her complaint or that the complaints about her were related to her discrimination

---

[61] *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) ("We have recognized that Title VII does not establish a general civility code for the workplace and that a plaintiff may not predicate a hostile work environment claim on the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces. Therefore, to avoid summary judgment at the prima facie stage, a plaintiff must present evidence that creates a genuine dispute of material fact as to whether the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.") (citations, quotations, and alterations omitted).

complaint. Moreover, the first coworker complaint about Washington did not occur until seven months after Washington's discrimination complaint. This is insufficient as a matter of law. The Tenth Circuit has rejected the assertion of a pattern of retaliation where there was no evidence from which a fact finder could infer a retaliatory motive underlying the alleged retaliatory acts.[62]

Because Washington has failed to present evidence of retaliation "based on more than mere speculation, conjecture, or surmise,"[63] she cannot defeat U.S. Bank's motion for summary judgment.

### C.     Plaintiff's ADA Claims

In its summary judgment motion, U.S. Bank addressed Washington's claims for disability discrimination and retaliation under the Americans with Disabilities Act at length. In her response, Washington did not address U.S. Bank's arguments and stated affirmatively that she is abandoning her ADA claims. The Court therefore holds that Washington has abandoned her claims for disability discrimination and retaliation under the ADA, and summary judgment is warranted.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 30) is **GRANTED.**

**IT IS SO ORDERED.**

---

[62] *Goldstein v. Sprint United Mgmt. Co.*, 288 F. App'x 476, 483 (10th Cir. 2008) (citing *Metzler*, 464 F.3d at 1173–74).

[63] *Ward*, 772 F.3d at 1203 (quoting *Bones*, 366 F.3d at 875).

-19-

This case is closed.

Dated this 7th day of October, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE